UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80964-CIV-MARRA

ALBERTO PUENTES,

Plaintiff,

vs.

SIBONEY CONTRACTING CO., a Florida
profit corporation, SIBONEY TRANSPORT
CO., a Florida Profit corporation, and
DANTE SEVI, individually,

Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendants' Motion for Summary Judgment (DE 24) and Plaintiff's Motion for Partial Summary Judgment (DE 45). The Court has carefully considered the Motions and is otherwise fully advised in the premises.

I. Background[1]

Defendant Siboney Contracting Co. ("SC") is a company which brokers or contracts with owners, contractors and customers for the sale and transport or hauling of fill, gravel, rock, sand, etc. ("aggregates") generally used in the construction industry. (Dante Sevi Aff. ¶ 3, DE 29.) SC establishes the prices for both the aggregates and the transport or hauling services in its contracts with customers. (Sevi Aff. ¶¶ 3-4.) Siboney Transport Co. ("ST") is a trucking company whose sole purpose is to provide trucking services for the hauling of aggregates to and from job sites,

---

[1] Plaintiff did not controvert Defendants' statement of fact. Pursuant to Local Rule 56.1(b), "all material facts set forth in the movant's statement filed and supported [ ] will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." S.D. Fla. L.R. 56.1(b).

i.e., to provide the transport, pick-up, delivery or removal.[2] (Sevi Aff. ¶¶ 5, 22; Pl. Dep. at 25, DE 28-1.)  ST receives daily orders from customers who have accounts under preexisting contracts with SC and arranges for trucks and drivers to provide transport and hauling. (Sevi Aff. ¶¶ 4-5.)  ST utilizes independent owners/operators to provide trucks and drivers for the transport, pick-up, delivery and removal of aggregates on job sites. (Sevi Aff. ¶ 6; Pl. Dep. 47-48.)  It is easier for an owner to deal with a broker than to hire different independent truckers/operators and oversee that aspect of a construction job. (Sevi Dep. 28-29, DE 31-1.)

The Central Florida regional office (where Plaintiff worked) had only three employees, Dante Sevi, Felipe Padilla and Plaintiff Alberto Puentes ("Plaintiff"). (Sevi Aff. ¶ 10; Pl. Dep. 54-55.)  Mr. Sevi is a vice-president and oversees the Central Florida division for SC. (Sevi. Aff. ¶ 11; Pl. Dep. 54; Sevi Dep. 5.)  Mr. Sevi handles office management in Central Florida. (Sevi Dep. 4-9.)  Mr. Padilla worked in the office as the office manager and estimator for the Central Florida division of SC. (Sevi. Aff. ¶ 12; Pl. Dep. 54-55.)   Plaintiff worked for ST in the field as the dispatcher for the Central Florida division, making sure that the trucks were coordinated, scheduled, and the trucking work got done. (Sevi Aff. ¶ 13; Pl. Dep. 55.)   Other than the president and vice-president, all of ST's employees are dispatchers. (Sevi Dep. 25.)

Plaintiff was hired to be a dispatcher in June of 2006 by Mr. Sevi and worked until June 20, 2011. (Sevi Aff. ¶ 13; Pl. Dep. 18, 22; Sevi Dep. 7; Pl. Decl. ¶ 1, DE 45-2.)  Plaintiff was initially on the SC payroll when he was training in the office and becoming familiar with the

---

[2] At one point in Plaintiff's deposition, he stated that ST's primary function was to provide "customer service" and trucking is "just a tool." (Pl. Dep. 85-86.)

companies.[3]  In August of 2006, Plaintiff was transferred to the field to start as a dispatcher and was put on ST's payroll, where he remained as a ST employee throughout his employment until he quit. (Sevi Aff. ¶ 14.)  Plaintiff understood that he would be paid on a salary basis. (Pl. Dep. 22-23.)  His job involved non-manual work. (Pl. Dep. 113.)  Plaintiff received a salary of $37,510.32 for each year he worked, which amounted to $721.00 a week. He was never docked for missing work. (Sevi Aff. ¶ 18; Pl. Dep. 103.)  Plaintiff never complained he was not being paid overtime. (Pl. Dep. 24.)  Defendants did not keep track of the number of hours worked by Plaintiff. (Sevi Dep. 14.)   Mr. Sevi testified that Plaintiff was not paid overtime because he was in "a management role as a dispatcher/foreman" and because brokers in this industry typically work on a salary basis. (Sevi Dep. 14, 21-22.)  Plaintiff set his own schedule and was free to go home when his job duties were finished. (Sevi. Aff. ¶ 18; Pl. Dep. 65, 84-85.)

Plaintiff learned to do his job through experience. (Pl. Dep. 53-54.)  Plaintiff's dispatch job had two primary areas of responsibility: (1) taking the orders from customers and coordinating and scheduling the truck and drivers to create a daily dispatch schedule to fill those orders and (2) visiting job sites daily, overseeing and supervising the truckers, acting as liaison with the owners and job superintendents, assuring that the trucking work was done correctly to the satisfaction of the customers, and handling any problems or emergencies that arose in the field. (Sevi Aff. ¶ 19; Pl. Dep. 28-29, 33, 39-40, 43, 45, 48, 52-55, 61, 63-64, 73-78, 81-82, 85-

---

[3] When asked about hiring Plaintiff, Mr. Sevi testified that he supervised Plaintiff. (Sevi Dep. 7.)  Later, when describing when Plaintiff showed up for work, Mr. Sevi stated that he did not "manage" Plaintiff, was "never" there to see what time Plaintiff showed up for work but Plaintiff was to arrive at the work sites by 7:00 am when the jobs started. (Sevi Dep. 16.) Mr. Sevi did determine Plaintiff's pay rate. (Sevi Dep. 8.)

3

86 113-14.) Plaintiff's job responsibilities included planning, coordinating and dispatching the trucks to different projects, visiting the projects under contract and associated quarries and making sure the dispatched trucks arrived and everything ran smoothly, communicating with the customer's field management and resolving any problems that might arise. (Sevi Aff. ¶ 20; Pl. Dep. 96-97.)

After receiving the daily orders from customers, Plaintiff would take telephone calls from truckers looking for work, provide them with work orders and organize the work schedule on a dispatch sheet, and email or send by facsimile the schedule to the home office in West Palm Beach. (Pl. Dep. 27-29, 32-33.) Plaintiff considered many factors in filling the daily orders, preparing the dispatch schedule and deciding which driver or truck he would assign to fill the needs of a particular job. The factors he considered included whether a driver spoke English and other language barriers, the driver's familiarity with the job sites, the driver's relationship with the customers, the particular needs of a job, the dimensions, capacities and sizes of the trucks, the reliability and qualifications of the drivers, the age and quality of the trucks, and the distance of the hauls.  If there were issues with drivers not having insurance or proper paper work up to date, it was Plaintiff's decision whether to call the office and coordinate getting the problem solved or to simply assign another trucker to the order.[4]  He had full authority to refuse any drivers or not hire them again if he had problems or was dissatisfied with their performance.[5] (Sevi Aff. ¶ 24;

---

[4] Customers had to go through Plaintiff to solve any problems. (Pl. Dep. 39-40, 81-82.)

[5] Plaintiff's declaration states that he did not supervise any employees. (Pl. Decl. ¶ 2.)

Pl. Dep. 63-65.) The job orders, schedules and routes varied daily. The decisions were made without rules, direction or supervision from ST. (Sevi Aff. ¶¶ 23-26; Pl. Dep. 48, 52-55, 63-65, 91.)

Plaintiff also dealt with problems that arose on site which included truckers not showing up, truckers bringing the wrong material, truckers showing up hung over, flat tires, accidents, speeding and disobeying rules. (Sevi Aff. ¶¶ 16, 25, 27; Pl. Dep. 73-81, 85, 113-14.) Plaintiff had the discretion to determine what order to visit the job sites. In making these decisions, he took into account the distances from the office, the likelihood that a site would have more problems, whether the job was ongoing, his rapport with the customers at each site, and the number of trucks scheduled to work at a site. (Sevi Aff. ¶ 27; Pl. Dep. 82-85.) Plaintiff was the "front man" and he exercised discretion and made decisions how to handle problems at the work sites. (Pl. Dep. 82-85, 113-14.)

Plaintiff's declaration states that he worked most of his days traveling to the construction sites or working at the construction sites, providing hands on direction and customer service to non-employees and he was a blue-collar worker. (Pl. Decl. ¶ 4.) The declaration also states that his work did not relate to the management or the general business operations of Defendants, but instead focused on the performing the services Defendants provided. (Pl. Decl. ¶ 6.) Plaintiff's declaration also states that he was a "work horse" and did not assist in running or servicing the business. (Pl. Decl. ¶ 7.)

Defendants move for summary judgment, claiming that Plaintiff is not entitled to overtime compensation because he was employed in a bona fide administrative capacity.

5

Specifically, Defendants contend that the record demonstrates, as a matter of law, that Plaintiff earned over $455.00 per week, primarily performed non-manual work directly related to the management or general business operations of Defendant, and his work primarily required the exercise of discretion and independent judgment with respect to matters of significance. In response, Plaintiff argues that summary judgment is not appropriate because he was a manual laborer who lacked discretion and independent judgment and discovery has not yet been completed.

Plaintiff also moves for summary judgment. His motion seeks a ruling that (1) Defendants are Plaintiff's employer; (2) Defendants are an enterprise; (3) Defendants are not entitled to the affirmative defense of the administrative exemption; (4) Plaintiff should receive overtime compensation and liquidated damages and (5) Defendants showed reckless disregard of the Fair Labor Standards Act ("FLSA"). In response, Defendants claim that Plaintiff's declaration controverts the assertions made in his deposition with respect to the administrative exemption and must be disregarded. With respect to Plaintiff's remaining arguments, Defendants contend that factual issues preclude summary judgment.

II.  Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III. Discussion

The FLSA requires an employer to compensate an employee who works in excess of 40 hours a week at a rate of one and one-half times their regular rate of compensation. 29 U.S.C. § 207(a)(1). However, this requirement does not apply to an employee who is employed in a bona fide executive, administrative or professional capacity. 29 U.S.C. § 213(a)(1). In determining whether an employee is exempt, the Court must look to the regulations promulgated by the Secretary of Labor. Exemptions to the FLSA, however, must be construed narrowly and the employer bears the burden of demonstrating that an employee is exempt. See Corning Glass Works v. Brennan, 417 U.S. 188, 197-98 (1974); Evans v. McClain of Georgia, Inc., 131 F.3d 957, 965 (11th Cir. 1997). Whether an employee is exempt is a question of law. Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986).

With respect to the administrative exemption, the regulations indicate that this category of exemption applies when an employee's compensation is a salary not less than $455.00 a week;[6] primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers and primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200. With respect to the "general business operations," the "employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a).

---

[6] The parties agree that Plaintiff's salary was not less than $455.00 a week.

Factors to consider in determining whether an employee exercises discretion and independent judgment include, but are not limited to:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).

Here, the record evidence shows that Plaintiff's primary duty was the performance of office work directly related to the general business operations of the employer. ST's business is to provide trucking services for the hauling of aggregates to and from job sites to their customers. (Sevi Aff. ¶¶ 4-5; Pl. Dep. 25.) To that end, Plaintiff took daily orders from the customers, coordinated and scheduled the truckers, oversaw the truckers, visited job sites daily, acted as liaison with the owners and job superintendents, assured that the trucking work was done correctly to the satisfaction of the customers, and handled any problems or emergencies that arose in the field. (Sevi Aff. ¶¶ 19-20; Pl. Dep. 28-29, 33, 39-40,43, 45, 48, 52-54, 61, 63-64, 74-78, 96-97, 113-14.) In fact, Plaintiff was in charge of all activities relating to the daily dispatch and running of the trucking services by ST in Central Florida. (Sevi Aff. ¶¶ 23-25; Pl. Dep. 54-55, 85-86.)

9

Furthermore, in carrying out these duties, Plaintiff consistently exercised discretion and independent judgment. For example, in filling the customer's daily orders, Plaintiff needed to consider: whether a driver spoke English or possessed other language barriers; the driver's familiarity with the job sites; the driver's relationship with the customers; the particular needs of a job; the dimensions, capacities and sizes of the trucks; the reliability and qualifications of the drivers; the age and quality of the trucks and the distance of the hauls. Significantly, the job orders, schedules and routes varied daily. (Sevi Aff. ¶ 26; Pl. Dep. 48, 52-55, 63-65, 91.)

Dispatchers are required to take all these factors into consideration in deciding how to staff the daily orders and Plaintiff learned to do this through experience. (Pl. Dep. 53-54.) Moreover, as to the daily hiring of drivers, if there were issues with drivers not having insurance or proper paper work up to date, it was Plaintiff's decision whether to call the office and coordinate getting the problem solved or to simply assign another trucker to the order. He had full authority to refuse any drivers or not hire them again if he had problems or was dissatisfied with their performance. (Pl. Dep. 63-65.)

Although the Court's decision can be easily supported by reliance on the regulations pertaining to the administrative exemption, the Court also notes that a recently decided Eleventh Circuit case is particularly analogous. In Rock v. Ray Anthony International, LLC, a dispatcher for a crane rental company sued his employer under the FLSA. Rock v. Ray Anthony International, LLC, 380 F. App'x 875 (11th Cir. 2010). In finding the administrative exemption applied, the Court affirmed the district court's finding that the plaintiff effectively managed the crane rental department because the plaintiff's job duties included customer communication,

choosing the appropriate crane for specific jobs, assigning operators to cranes, overseeing other employees, preparing and reviewing job tickets, and maintaining the crane rental schedule. Id. at 877. The Court also affirmed the district court's finding that the plaintiff exercised discretion and independent judgment, noting that the plaintiff directed and oversaw the crews, assigned employees and equipment to each of the customer's jobs, decided which employees to send based on their experience and reliability, handled emergencies, did not require approval in making these decisions, and utilized a high skill level in maintaining the schedule. Id. at 879. The nearly identical facts between Rock and the instant case support the finding that Plaintiff is exempt from FLSA's overtime requirements.

Nonetheless, Plaintiff contends that Rock is not applicable because Plaintiff did not manage any of Defendants' divisions but simply handled the day-to-day affairs. (DE 31 at 6.) However, in Rock, the Court listed the plaintiff's responsibilities and, based on that list, held that the "district court concluded that [the plaintiff] *effectively managed* the [ ] crane rental department, which the district court found was the heart of the [defendant's] business and necessary to [the defendant's] business operations." Id. at 877 (emphasis added and internal quotation marks omitted). The Court can draw the same conclusion based on the evidence of Plaintiff's job duties in the instant case; namely, that Plaintiff was entirely responsible for dispatching of truckers. Moreover, Plaintiff's attempt to distinguish Rock on the basis that the plaintiff in Rock supervised two employees is unavailing. Although Plaintiff did not supervise any employees, he did essentially supervise all of the truckers.

The Court also rejects Plaintiff's reliance on the facts set forth in his declaration; i.e., that

his work did not relate to management or the general business operations of Defendants, that he did not exercise discretion, and that he was a work horse and grunt worker. These statements are conclusory and do not provide specific facts in support.[7] See Bald Mountain Park Ltd. v. Oliver, 863 F.2d 1560, 1563 (11th Cir. 1989) ("Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment."); Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations [in an affidavit] without specific supporting facts have no probative value."). Moreover, to the extent these statements are contrary to his deposition testimony, they must be disregarded. See Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc., 736 F.2d 656, 658 (11th Cir.1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.")

In addition, Plaintiff's reliance on his deposition testimony is misleading. By way of example, Plaintiff claims that he was unable to make changes to orders (DE 31 at 8 citing Pl. Dep. 40), but the deposition testimony explains the change he was unable to make was limited to charging a different rate. Plaintiff also claimed that he was "severely limited in truck selection." (DE 31 at 8 citing Pl. Dep. 48.) In fact, Plaintiff explained that "[w]e just run one size out of this

---

[7] Even assuming Plaintiff performed some "grunt work," the administrative exemption still applies when manual labor is performed, if the primary duty involves non-manual labor directly related to the general business operations. See, e.g., Black v. Colaska Inc., No. C07-823JLR, 2008 WL 4681567, at * 8 (W.D. Wash. Oct. 20, 2008); Bagwell v. Florida Broadband, LLC, 385 F. Supp. 2d 1316, 1323-24 (S.D. Fla. 2005).

particular office." (Pl. Dep. 48.)  The Court reads this as meaning there was only one size truck available for the job, and not that Plaintiff was not allowed to make the decision about the size of the truck needed.[8]  In any event, the record shows that Plaintiff had an unfettered ability to choose truck drivers, which clearly required use of discretion and independent judgment.

Plaintiff also relies on Alvarez v. Key Transp. Svc. Corp., 541 F. Supp. 2d 1308 (S.D. Fla. 2008).  In that case, a car dispatcher brought a FLSA action against a transportation company.  The court found that the plaintiff did not meet the test for the administrative exemption because the plaintiff performed "duties closer to working on a manufacturing production line or selling a product in a service establishment because he was working towards fulfilling a customer's need for a service, than to performing administrative duties, which generally do not involve customers but rather the day-to-day operations of the business." Id. at 1313 (internal quotation marks and ellipses omitted).  The court also found that the plaintiff did not make decisions on "matters of significance" and noted that his duties "primarily involved monitoring traffic, directing cars to pick up customers and providing customer service." Id. at 1313-14.

Alvarez can be distinguished from the instant case on several grounds.  First, the plaintiff in Alvarez worked for a limousine business and was responsible for dispatching cars for

---

[8] The deposition testimony from Plaintiff on this point supports this conclusion:

   Q:   How would you know what size truck was needed?
   A:   We just run one size out of this particular office.  The dump truck is, you know, 21 ton, 22 ton.  And 18 yards is the standard size.

(Pl. Dep. 48.)

passengers as opposed to dispatching trucks for the hauling of aggregate. Based on the facts presented in both cases, it is clear that coordinating the hauling of aggregate in the instant case is more complex than the dispatching of limousines in Alvarez. In other words, Plaintiff's duties require a greater degree of management, control and problem solving. The duties of the plaintiff in Alvarez were more trivial, e.g., directing cars to pick up passengers and monitoring traffic. Furthermore, there were factual disputes in Alvarez regarding the plaintiff's authority to discipline employees; notably, the court stated that there was no evidence in the record that the plaintiff ever disciplined any employees. Id. at 1310. Lastly, there was record evidence in Alvarez that the plaintiff cleaned desks and washed cars. Id.

Next, the Court rejects Plaintiff's reliance on the "production work dichotomy" discussed in 29 C.F.R. 541.201.[9] The record evidence does not support Plaintiff's claim that his job duties were more in line with "selling a product in a retail or service establishment." (DE 31 at 5; DE 45 at 14.) Specifically, the Court rejects Plaintiff's characterization of his job as one that provides customer service to the trucking industry. Instead, the Court finds, as a matter of law, that Plaintiff oversaw the brokering of trucking services for Defendants' business. If the Court were to adopt Plaintiff's characterization, any time a company provided any service to the public,

---

[9] The Court notes that "[t]he administration/production dichotomy is but one analytical tool, to be used only to the extent it clarifies the analysis." Colyer v. SSC Disability Svsc., LLC, No. 11–20984–CIV, 2012 WL 882500, at * 9 (S.D. Fla. Mar. 14, 2012); Final Rule Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employee, 69 Fed. Reg. 22122, 22141 (Apr. 23, 2004) ("We do not believe that it is appropriate to eliminate the [production work dichotomy] entirely from the administrative exemption, but neither do we believe that the dichotomy has ever been or should be a dispositive test for exemption.) Here, it does not clarify the analysis.

the employees of that company could never fall under the administrative exemption.

Lastly, the Court finds that Plaintiff's contention that Defendants' motion for summary judgment cannot be granted because discovery has not been completed is without merit. Significantly, Plaintiff does not state what discovery is outstanding. More importantly, Plaintiff moves for summary judgment on the basis that the administrative exemption does not apply. As such, there is no basis to find that summary judgment is not ripe for disposition.

Because the Court finds that the administrative exemption applies, and Plaintiff is not entitled to overtime compensation, it is unnecessary to address the additional grounds for summary judgment raised by Plaintiff.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1)   Defendants' Motion for Summary Judgment (DE 24) **is GRANTED**.

2)   Plaintiff's Motion for Partial Summary Judgment (DE 45) is **DENIED.**

3)   The Court shall separately issue judgment for Defendant.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 19th day of October, 2012.

_____
KENNETH A. MARRA
United States District Judge